IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| REBECCA SORENSON, Individually, and LEWIS WOHLFORD as Administrator of the Estate of ANNA MAE YOCHAM<br><br>Plaintiffs,<br><br>vs.<br><br>GOLDEN PLAINS REHABILITATION CENTER, LLC<br><br>and<br><br>WILLIAM ROTHNER<br><br>and<br><br>ATIED ASSOCIATES, LLC<br><br>Defendants. | Case No. 2:16-cv-02116<br><br>Jury Trial Demanded |

## COMPLAINT

COMES NOW Plaintiff Rebecca Sorenson ("Plaintiff Sorenson"), individually, and Plaintiff Lewis Wohlford, as Special Administrator of the Estate of Anna Mae Yocham ("Plaintiff Wohlford"), and for their causes of action against the above-named Defendants, states and alleges as follows:

### The Plaintiffs

1. Plaintiffs' Decedent, Anna Mae Yocham ("Ms. Yocham"), was a resident of Golden Plains Rehabilitation Center located at 1202 E 23rd Ave, Hutchinson, KS 67502, from approximately July 2011 to October 10, 2014.

2. Plaintiff Sorenson resides in North Platte, Nebraska and is a surviving granddaughter and an heir-at-law of Ms. Yocham within the meaning of K.S.A. § 60-1902.

1

3. Plaintiff Wohlford is the duly appointed Administrator of the Estate of Anna Mae Yocham pursuant to letters issued on February 8, 2016 by the District Court of Reno County, Kansas, Case No 2016 PR 004.

### The Defendants

4. Plaintiffs incorporate by reference all of the foregoing allegations in this Complaint as though fully set forth herein.

5. Defendant Golden Plains Rehabilitation Center, LLC ("Defendant Golden Plains") is a Kansas limited liability company with its principle place of business in Reno County, Kansas. Defendant Golden Plains does/did business under the trade name "Golden Plains Rehabilitation Center."

6. At all times relevant, Defendant Golden Plains obtained a license from the State of Kansas to operate a skilled nursing facility known as Golden Plains Rehabilitation Center located at 1202 E 23rd Ave, Hutchinson, KS 67502. Defendant Golden Plains can be served at its Registered Agent: The Corporation Company, Inc., 112 SW 7th St Suite 3C, Topeka, KS 66603.

7. Defendant Atied Associates is an Illinois limited liability company, and at all times relevant, owned, operated, managed, maintained, and/or controlled Golden Plains Rehabilitation Center located at 1202 E 23rd Ave, Hutchinson, KS 67502. Defendant Atied Associates can be served at its Registered Agent: David Aronin, 2201 W Main St., Evanston, Il 60202.

8. Defendant William Rothner is a resident of Evanston, Illinois, and at all times relevant, owned, operated, managed, maintained, and/or controlled Golden Plains Rehabilitation

Center located at 1202 E 23rd Ave, Hutchinson, KS 67502. Defendant Rothner can be served at his dwelling located at 9100 Kedvale Ave., Skokie, Il 60076.

9. At all times relevant, Defendant Rothner was also the "Managing Employee" of Golden Plains Rehabilitation Center as defined by Centers for Medicare & Medicaid Services, meaning that he conducted the day-to-day operation of Golden Plains Rehabilitation Center.

10. At all time relevant, Defendant Rothner was also the corporate Manager of Defendant Golden Plains, and in that role, willfully participated in the tortious acts that are the subject of this Complaint.

## Jurisdiction and Venue

11. Plaintiffs incorporate by reference all of the foregoing allegations in this Complaint as though fully set forth herein.

12. Plaintiff Sorenson in the only Plaintiff asserting a wrongful death claim in this matter. Plaintiff Sorenson is a resident of North Platte, Nebraska while Defendant Golden Plains is a Kansas Corporation, Defendant Atied Associates is an Illinois Corporation, and Defendant Rothner is an Illinois resident. Therefore, Plaintiff Sorenson brings Count I of the Complaint for wrongful death under federal diversity jurisdiction, 28 U.S.C. § 1332(a)(1), as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

13. Plaintiff Wohlford is the Administrator of the Estate of Anna Mae Yocham and is the only Plaintiff entitled to pursue a negligence claim based on a survival action pursuant to K.S.A. § 60-1801 as contained in Count II of the Complaint. Plaintiff Wohlford is therefore deemed a Kansas resident pursuant to 28 U.S. Code § 1332(c)(2).

14. Plaintiff Wohlford brings Count II of the Complaint under the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), as his claims "are so related to claims

in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

15. Specifically, both the wrongful death claim (Count I) and the survival claim (Count II) arise out of the care and treatment Ms. Yocham received prior to her death and while under the care of Defendants.

16. Indeed, both claims allege the care and treatment received by Ms. Yocham was below the accepted standard of care, and both claims are against the same Defendants. In fact, the claims involve the same factual issues, and the claims differ only in the type of damages that may be recovered.

17. As such, Counts I and II form part of the same case or controversy to fall within subsection (a) of 28 U.S.C. § 1367, and the Court may, therefore, exercise supplemental jurisdiction over Count II.

18. Defendant Golden Plains along with its nursing staff and other employees and agents committed tortious acts in the state of Kansas, thereby making jurisdiction in this Court proper.

19. Pursuant to K.S.A. § 60-308(b)(2), Defendant Atied Associates purposefully availed itself of the protections and/or benefits of the laws in Kansas by committing tortious acts within the state including, but not limited to, failing to ensure that Golden Plains Rehabilitation Center had appropriate policies and procedures for its nursing staff, was properly capitalized, funded, staffed, and that staff received adequate training and supervision, thereby making jurisdiction proper in this Court.

20. Pursuant to K.S.A. § 60-308(b)(2), Defendant Rothner purposefully availed himself of the protections and/or benefits of the laws in Kansas by committing tortious acts

4

within the state including, but not limited to, failing to ensure that Golden Plains Rehabilitation Center had appropriate policies and procedures for its nursing staff, was properly capitalized, funded, staffed, and that staff received adequate training and supervision, thereby making jurisdiction proper in this Court.

21. A substantial part of the events or omissions giving rise to the claims described in the Complaint occurred in Kansas, thereby making venue proper in this Court.

### Agency

22. Plaintiffs incorporate by reference all of the foregoing allegations in this Complaint as though fully set forth herein.

23. All actions of the nursing staff and other employees and agents of Defendants who were responsible for providing care and treatment to Ms. Yocham, and ensuring that Golden Plains Rehabilitation Center had appropriate policies and procedures for its nursing staff, was properly capitalized, funded, staffed, and that staff received adequate training and supervision while Ms. Yocham was a resident at Golden Plains Rehabilitation Center, alleged herein, were performed within the scope of their employment or agency with Defendants.

24. For that reason, Defendants are vicariously liable for the actions of its nursing staff and other employees and agents in relation to the care of, or failure to care for Anna Mae failing to ensure that Golden Plains Rehabilitation Center had appropriate policies and procedures for its nursing staff, was properly capitalized, funded, staffed, and that staff received adequate training and supervision while Ms. Yocham was a resident at Golden Plains Rehabilitation Center.

**Factual Background**

25. Plaintiffs incorporate by reference all of the foregoing allegations in this Complaint as though fully set forth herein.

26. As a result of her physical, mental and psychiatric condition, Ms. Yocham was entirely dependent upon Golden Plains Rehabilitation Center's staff for her safety and relied upon its staff to provide appropriate interventions to prevent her from choking and dying.

27. Ms. Yocham's January 1, 2014 Minimum Data Set (MDS) revealed: (1) a BIMS (brief interview for mental status) score of seven indicating a severe cognitive impairment; and (2) Ms. Yocham required supervision of one staff person for eating and received a mechanically altered diet (required change in texture of foods or liquids such as pureed food, thickened liquids).

28. The Nutrition Care Plan for Ms. Yocham dated January 27, 2014, revealed that: (1) she continued to have difficulty with chewing and utilized speech therapy; (2) she had recently returned from the hospital with a mechanical soft diet and thickened liquids; and (3) she asked staff for help with eating at times.

29. Ms. Yocham's therapy discharge summary dated May 27, 2014, showed that she received a mechanical soft diet with nectar-thickened liquids. The summary further indicated that speech therapy staff downgraded Ms. Yocham's diet to "pureed texture" with nectar-thickened liquids.

30. The Nutritional Status Review dated May 31, 2014, and signed by the Registered Dietician at Golden Plains Rehabilitation Center ordered that Ms. Yocham receive a "puree diet" with nectar-thickened liquids for a diagnosis of dysphagia for swallowing problems.

31. Residents on a purred diet should not receive a sandwich unless it is of pureed consistency. In fact, Golden Plains Rehabilitation Center's "diet education binder" stated that peanut butter was a food to avoid for someone on a pureed diet.

32. On October 10, 2014, a Golden Plains Rehabilitation Center staff person was making snacks for the residents. The snack was a peanut butter and jelly sandwich. A staff person made, and gave, a peanut butter and jelly sandwich to Ms. Yocham.

33. At the time this staff person made, and gave, a peanut butter and jelly sandwich to Ms. Yocham, the staff person knew that Ms. Yocham was on a pureed diet due to difficulty swallowing. This staff person also knew that a peanut butter and jelly sandwich was not part of a pureed diet, and therefore, should not have been given to Ms. Yocham.

34. Even worse, Golden Plains Rehabilitation Center staff had "regularly" given peanut butter and jelly sandwiches to Ms. Yocham as snacks when they knew that her pureed diet forbid such snacks.

35. As a result, Golden Plains Rehabilitation Center staff discovered Ms. Yocham trying to cough with no sounds coming from her at approximately 4:00 PM on October 10, 2014.

36. Staff asked Ms. Yocham if she was choking and she nodded her head indicating that she was in fact choking.

37. Staff then began the Heimlich maneuver. During that time, two pieces of food came out of Ms. Yocham's mouth. The food was not chewed well. Staff then a performed a finger swipe in Ms. Yocham's oral cavity and found no other food.

38. Ms. Yocham then began to clear her throat and staff gave her a glass of "thickened water" to sip. Ms. Yocham then became unresponsive and her skin turned blue. Staff then again performed the Heimlich maneuver.

39. Additional staff then arrived to assist with Ms. Yocham. Staff placed Ms. Yocham on the floor at which time she had no respirations and no pulse. Staff initiated CPR while another staff person notified emergency medical services ("EMS") at 4:08PM – more than eight minutes after Ms. Yocham started choking. The staff person who initiated CPR was not CPR certified at that time.

40. Staff continued CPR until EMS arrived who then took over assisting Ms. Yocham.

41. At 4:30PM, EMS personnel transported Ms. Yocham from Golden Plains Rehabilitation Center to the hospital where Ms. Yocham died shortly thereafter.

42. On November 20, 2014, the Kansas Department for Aging and Disability Services, on behalf of the Department of Health and Human Services, Centers for Medicare & Medicaid Services issued Golden Plains Rehabilitation Center a Statement of Deficiency related to the conduct described in the Complaint.

43. The Statement of Deficiency stated: "Based on record review and interview, the facility failed to adequately follow the physician's order for [Ms. Yocham]. Physician orders for [Ms. Yocham] included a puree consistency diet with nectar-thickened liquids. The facility provided [Ms. Yocham] a regular diet peanut butter sandwich for a snack. [Ms. Yocham] choked on the sandwich and died. The deficient practice placed [Ms. Yocham] in immediate jeopardy."

## COUNT I

### Plaintiff Sorenson's Wrongful Death Claim

44. Plaintiffs incorporate by reference all of the foregoing allegations in this Complaint as though fully set forth herein.

45. At all relevant times, Defendants had a duty to act in accordance with the standards of care required of those owning, operating, managing, maintaining, and/or controlling a skilled nursing facility.

46. These duties required Defendants to implement and enforce policies and procedures at Golden Plains Rehabilitation Center to ensure the proper care for, and treatment of, residents such as Ms. Yocham.

47. These duties required Defendants to have sufficient and qualified staff at Golden Plains Rehabilitation Center to ensure the proper care for, and treatment of, residents such as Ms. Yocham.

48. These duties required Defendants to ensure that Golden Plains Rehabilitation Center's nurses and other staff were properly educated and trained with regard to the care for and treatment of residents such as Ms. Yocham.

49. Specifically, during the course of their care and treatment of Ms. Yocham, Defendants and their agents, servants and/or employees breached their duties and were guilty of the following acts of negligence and carelessness by failing to measure up to the requisite standard of due care, skill, and practice ordinarily exercised by members of their profession under the same or similar circumstances, including:

   a. By failing to timely, consistently, and properly assess and document Ms. Yocham's physical condition;

   b. By failing to adequately assess Ms. Yocham's risk of choking;

   c. By failing to provide adequate supervision and/or intervention to address Ms. Yocham's risk of choking;

   d. By failing to provide adequate nursing staff to ensure Ms. Yocham's 24-hour protective oversight and supervision;

    e. By failing to properly supervise and train the employees, agents and/or servants of the Defendants who were responsible for the care and treatment of Ms. Yocham;

    f. By failing to provide competent staff;

    g. By failing to provide adequate training to staff regarding the prevention of choking;

    h. By failing to provide adequate supervision of staff regarding the prevention of choking;

    i. By failing to provide adequate assistive devices to prevent injuries;

    j. By failing to enact and carry out an adequate care plan in regard to Ms. Yocham's risk for choking;

    k. By failing to timely report to a physician changes in the condition of Ms. Yocham;

    l. By failing to carry out the instructions of Ms. Yocham's physician;

    m. By failing to timely transfer Ms. Yocham to a facility that could provide her adequate care;

    n. By failing to have and/or implement appropriate polices and procedures regarding the prevention, assessment and treatment of residents like Ms. Yocham who were at risk for choking;

    o. By failing to carry out and follow standing orders, instructions and protocol regarding the prevention of choking;

    p. By failing to provide appropriate supervision to Ms. Yocham, while she was eating in an effort to prevent her from choking;

    q. By failing to timely respond to Ms. Yocham once she started choking;

50. The wrongful acts of Defendants directly caused or directly contributed to cause the death of Ms. Yocham.

51. As a direct and proximate consequence of the death of Ms. Yocham, Plaintiff Sorenson has sustained pecuniary and non-pecuniary damages, including, but not limited to, mental anguish, suffering and bereavement; loss of companionship; loss of services, loss of attention and loss of a complete family; loss of familial care, advice, and protection.

WHEREFORE, Plaintiff Sorenson prays that the Court enter judgment against Defendants for a reasonable sum of money in excess of seventy-five thousand dollars ($75,000) for damages in order to fairly compensate for the losses suffered.

## COUNT II

### Plaintiff Wohlford's Negligence Claim as Administrator of the Estate of Anna Mae Yocham

52. Plaintiff incorporates by reference all of the foregoing allegations in this Complaint as if fully set forth herein.

53. At all relevant times, Defendants had a duty to act in accordance with the standards of care required of those owning, operating, managing, maintaining, and/or controlling a skilled nursing facility.

54. These duties required Defendants to implement and enforce policies and procedures at Golden Plains Rehabilitation Center to ensure the proper care for, and treatment of, residents such as Ms. Yocham.

55. These duties required Defendants to have sufficient and qualified staff at Golden Plains Rehabilitation Center to ensure the proper care for, and treatment of, residents such as Ms. Yocham.

56. These duties required Defendants to ensure that Golden Plains Rehabilitation Center's nurses and other staff were properly educated and trained with regard to the care for and treatment of residents such as Ms. Yocham.

57. Specifically, during the course of their care and treatment of Ms. Yocham, Defendants and their agents, servants and/or employees breached their duty and were guilty of the following acts of negligence and carelessness by failing to measure up to the

requisite standard of due care, skill, and practice ordinarily exercised by members of their profession under the same or similar circumstances, including:

a. By failing to timely, consistently, and properly assess and document Ms. Yocham's physical condition;

b. By failing to adequately assess Ms. Yocham's risk of choking;

c. By failing to provide adequate supervision and/or intervention to address Ms. Yocham's risk of choking;

d. By failing to provide adequate nursing staff to ensure Ms. Yocham's 24-hour protective oversight and supervision;

e. By failing to properly supervise and train the employees, agents and/or servants of the Defendants who were responsible for the care and treatment of Ms. Yocham;

f. By failing to provide competent staff;

g. By failing to provide adequate training to staff regarding the prevention of choking;

h. By failing to provide adequate supervision of staff regarding the prevention of choking;

i. By failing to provide adequate assistive devices to prevent injuries;

j. By failing to enact and carry out an adequate care plan in regard to Ms. Yocham's risk for choking;

k. By failing to timely report to a physician changes in the condition of Ms. Yocham;

l. By failing to carry out the instructions of Ms. Yocham's physician;

m. By failing to timely transfer Ms. Yocham to a facility that could provide her adequate care;

n. By failing to have and/or implement appropriate polices and procedures regarding the prevention, assessment and treatment of residents like Ms. Yocham who were at risk for choking;

o. By failing to carry out and follow standing orders, instructions and protocol regarding the prevention of choking;

    p. By failing to provide appropriate supervision to Ms. Yocham, while she was eating in an effort to prevent her from choking;

    q. By failing to timely respond to Ms. Yocham once she started choking;

58. The actions of Defendants were malicious, wanton, grossly negligent and reckless, and performed in reckless disregard of the welfare and safety of Ms. Yocham and others, such that, in addition to damages for pain and suffering and economic losses, Defendants are liable for punitive damages for their grossly negligent care of Ms. Yocham.

59. At the time Defendants caused Ms. Yocham's choking, they knew that their conscious disregard to adequately staff the facility, train and/or supervise their agents, servants and/or employees as required by state and federal law – created a high degree of probability of injury to residents, and consciously disregarded the safety of all residents including Ms. Yocham. Also, Defendants ratified the reckless conduct at issue.

60. Accordingly, Defendants showed a complete indifference to, or conscious disregard, for the safety of others, including Ms. Yocham and warrants punitive damages be assessed against Defendants in an amount that is fair and reasonable and will punish Defendants and deter Defendants and others from similar conduct.

61. As a direct and proximate result of Defendant's negligence, and their complete indifference to, or conscious disregard, for the safety of others, Ms. Yocham was harmed and suffered damages, including but not limited to pain, suffering, mental anguish, disability, disfigurement, and loss of enjoyment of life; hospital, doctor and related expenses; and other damages.

62. Plaintiff Wohlford is entitled to a jury trial as to the amount of punitive damages pursuant to the Seventh Amendment of the United States Constitution and *Jones v. United Parcel Services, Inc.*, No. 09–3275 (10th Cir. 2011).

WHEREFORE, Plaintiff prays that the Court enter judgment against Defendants for a reasonable sum of money in excess of seventy-five thousand dollars ($75,000) for actual and punitive damages together with the costs and expenses herein occurred, attorneys' fees and for such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs request a jury trial on all issues in this action in the Kansas City division.

Respectfully submitted,

THE STEELE LAW FIRM

/s/ Jonathan Steele
Jonathan Steele              KS # 24852
7500 College Blvd. Suite 700
Overland Park, KS 66210
Telephone: 913.608.4133
E-mail: jonathan@jsteelelawfirm.com

*Attorney for Plaintiff*